IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| GREENSTONE FARM CREDIT SERVICES, FLCA,<br><br>Plaintiff,<br><br>v.<br><br>NICOLET NATIONAL BANK,<br><br>Defendant. | Case No.: 22-CV-1225<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT

The Plaintiff, GreenStone Farm Credit Services, FLCA[1] ("GreenStone"), as and for its Complaint against the Defendant, Nicolet National Bank ("Nicolet"), alleges as follows:

## NATURE OF THE ACTION

1. This dispute, over which the Court has diversity jurisdiction, arises from Nicolet's willful decision to breach contractual and fiduciary duties owed to GreenStone under a 1998 Master Loan Participation Agreement entered into by Investors Community Bank, which was acquired by Nicolet in December of 2021, and GreenStone's predecessor, Farm Credit Services of Northeast Wisconsin, FLCA.

## THE PARTIES

2. The Plaintiff, GreenStone, is a federal agricultural credit association registered to transact business in Wisconsin with its principal place of business located at 3515 West Road,

---

[1] FLCA is the abbreviation for "Federal Land Bank Credit Association."

East Lansing, Michigan 48823. In 2003, Farm Credit Services of Northeast Wisconsin, FLCA, merged with and became part of GreenStone.

3. Upon information and belief, Defendant Nicolet is a national bank, with its principal place of business located at 111 North Washington Street, Green Bay, Wisconsin. Nicolet is a wholly owned subsidiary of Nicolet Bankshares, Inc. ("NCBS").

4. On December 2, 2021, NCBS merged with County Bancorp, Inc., and, as part of the merger, County Bancorp's wholly owned subsidiary, Investors Community Bank ("Investors"), was also merged into Nicolet. Investors' principal place of business was 860 North Rapids Road, Manitowoc, WI.

## JURISDICTION AND VENUE

5. This Court has exclusive, original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the Court has diversity jurisdiction over this dispute.

6. Pursuant to 12 U.S.C. § 2258, GreenStone is a citizen of Michigan, because GreenStone's principal office is located in East Lansing, Michigan.

7. Pursuant to 28 U.S.C. § 1348, Nicolet is a citizen of Wisconsin, because, upon information and belief, Nicolet's "main office" is located in Wisconsin.

8. Because GreenStone is a citizen of Michigan and Nicolet is a citizen of Wisconsin, there is complete diversity between the parties.

9. The amount in controversy is over $75,000.

10. This Court has personal jurisdiction over Nicolet pursuant to Wis. Stat. § 801.05(1)(d) because it is engaged in substantial and not isolated activities within the State of Wisconsin.

2

Case 1:22-cv-01225-WCG   Filed 10/18/22   Page 2 of 12   Document 1

11. This Court has personal jurisdiction over Nicolet pursuant to Wis. Stat. § 801.05(3) because GreenStone's injury is arising from acts or omissions that occurred, in whole or in part, within the State of Wisconsin.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events at issue occurred in this judicial district, in particular Brown County where Defendant maintains its main office.

13. Venue is likewise proper in this judicial district based upon a choice of venue clause in the Master Loan Participation Agreement.

## FACTUAL ALLEGATIONS

### I.  BACKGROUND FACTS ABOUT GREENSTONE AND THE FARM CREDIT SYSTEM.

14. GreenStone is an agricultural credit association organized and existing under the Farm Credit System.

15. The Farm Credit System has its origins in the 1916 Federal Farm Loan Act, which established a federal land bank in each of 12 districts created across the country, to provide a reliable source of credit for farmers and ranchers. The Farm Loan Act also created hundreds of national farm loan associations to serve as agents for the federal land banks.

16. Under the Farm Credit System, associations like GreenStone provide loans to rural and agricultural communities, helping farmers to develop, maintain, and expand farming operations, with part of each farmer's loan representing stock in the association.

17. GreenStone currently serves over 27,000 members throughout Michigan and Northeast Wisconsin and is the country's seventh largest association in the Farm Credit System.

## II. THE PARTICIPATION AGREEMENT BETWEEN GREENSTONE AND INVESTORS.

18. Under the Farm Credit System, GreenStone is authorized to engage in direct lending to rural and agricultural communities within its geographic territory, and it is also authorized to enter into loan participation agreements with commercial banks whereby it can participate in loans both within and outside its territory.

19. In a typical loan participation agreement, one or more lenders "participate" in a loan to a borrower by purchasing a fractional undivided interest in the principal amount of the loan. Participation loans may vary in size and structure. Sometimes, multiple lenders will provide funds for one loan with one lender taking the role of a "lead bank." At other times, a lead bank will originate and service a loan while the other banks provide some, or all, of the funds.

20. Since its start in 1997, Investors focused on lending to farmers, particularly dairy farms, however, its ability to pursue or finance larger loan requests was limited by its available capital.

21. On September 4, 1998, Investors entered into a Master Loan Participation Agreement (Participation Agreement) with GreenStone's predecessor, Farm Credit Services of Northeast Wisconsin, FLCA, with Investors as the Originating Lender and Farm Credit Services of Northeast Wisconsin, FLCA (hereinafter referred to solely as "GreenStone") as the Participant. A true and correct copy of the Participation Agreement is attached as Exhibit A. A Supplemental Agreement was entered into on October 19, 1999, a true and correct copy of which is attached as Exhibit B.

22. Under the Participation Agreement, Investors would offer loans to GreenStone for participation and provide such information as necessary for GreenStone to make an independent credit decision regarding the loan.

23. If GreenStone accepted an offer of participation, a completed participation loan would be memorialized in a Participation Certificate, which incorporated the terms of the Participation Agreement, and all supplements thereto, and GreenStone would transmit the full participation amount to Investors.

24. Under the Participation Agreement, each loan participation constituted a sale to GreenStone of a fractional undivided interest in the principal amount of the loan, the loan documents, and the underlying debt of the borrower.

25. The relationship between GreenStone and Investors was somewhat unusual in that while the parties entered what were considered "pro rata participations," which meant that the Participant's interest in a loan remained the same in proportion to the Originator's equity interest as advances were made or payments received, GreenStone generally participated at 100% of the loans offered by Investors. As such, because of its 100% participations, GreenStone generally owned 100% of the participation loans.

26. Investors retained legal title to the participation loans, performed all loan servicing, and dealt with the borrower exclusively while expressly agreeing it "shall be trustee for the benefit of and accountable to the Participant for all the participant's interest in all Participation Loans."

27. Investors further agreed that it would not take any servicing action that altered the original agreement with the borrower without prior written consent of GreenStone.

28. For the first 23 years of their partnership, GreenStone found Investors to be a trusted partner because Investors regularly offered new participations with reliable credit underwriting analyses and neither party tried to usurp the other's borrowers or participation interest.

29. The parties worked cooperatively and in good faith to address servicing issues that might arise with any particular borrower. For example, there were a few times over the course of the relationship when GreenStone asked Investors to re-purchase a loan participation because GreenStone became concerned about a loan's increased credit risk profile. Investors had no obligation under the Participation Agreement to agree to such a "buy out" but, upon information and belief, consented out of respect for GreenStone and the parties' long-term relationship.

30. Similarly, Investors and GreenStone often worked cooperatively to restructure loans with borrowers. This was usually accomplished by simply amending the participation certificate with a "rate conversion" to provide the borrower a lower rate or at other times, Investors might pay off GreenStone's participation interest prior to the maturity date of the participated loan as part of an internal loan refinance with one of its borrowers.

31. GreenStone did not object to these conversions or "pay offs" because Investors was continually offering new participations to GreenStone, and often included participation to GreenStone in the newly restructured or refinanced loan.

32. In sum, Investors and GreenStone always worked within the structure of the Participation Agreement as doing so was beneficial to both parties. Over the years, they worked cooperatively on hundreds of loan participations and, by 2021, GreenStone had over $300 million invested in loan participations with Investors.

### III. THE NICOLET MERGER AND BREACH OF THE PARTICIPATION AGREEMENT.

33. In June of 2021, Nicolet announced that it was merging with County Bancorp, and would also be absorbing County's wholly owned subsidiary, Investor's Community Bank.

34. While the merger did not become effective until December 2, 2021, GreenStone noticed a change in its relationship with Investors. Almost immediately after the announcement, the number of new participation offers GreenStone received began to slow rapidly, and then stopped completely.

35. Then, in late December 2021, GreenStone received its first post-merger regular monthly payment from Nicolet. Only the amount was much larger than normally transmitted by Investors because Nicolet included full payoffs of several participation loans prior to their maturity dates.

36. Unlike its predecessor Investors, Nicolet arranged these early pay offs without any notice to GreenStone, and plainly, without GreenStone's consent.

37. After first attempting to meet and discuss the matter, in a letter dated February 1, 2022, GreenStone advised Nicolet that these unilateral refinancing services breached the Participation Agreement because they were done without GreenStone's knowledge and consent.

38. The parties met later that February to discuss the breach and the damages sustained by GreenStone. At that meeting, Nicolet representatives announced to GreenStone that Nicolet was not going to send any new offers of participation to GreenStone and that they did not believe the Participation Agreement prevented Nicolet from paying off the participations prior to maturity.

39. As far as GreenStone is aware, this is the first time in the 23-year history of the relationship where Investors simply bought GreenStone out of a participation loan without notice or consent.

40. Shortly after the February meeting, Nicolet accelerated its strategy of cutting GreenStone out of existing participations and, as of October 1, 2022, Nicolet has unilaterally paid off 35 loans worth $62,838,137.57.

41. As a direct and proximate result, GreenStone has suffered and will suffer substantial economic losses, including the loss of interest from the loans, the loss of future business, decreasing market share, and a diminished portfolio.

## FIRST CAUSE OF ACTION
### (Breach Of Contract)

42. GreenStone repeats and realleges the allegations of Paragraphs 1 through 41 above as if fully set forth herein.

43. The Participation Agreement, the Supplemental Participation Agreement, and all the Participation Certificates are binding contracts between GreenStone and Nicolet.

44. Neither the Participation Agreement nor the Participation Certificates afford Nicolet the right to unilaterally pay off GreenStone's participation interest in participation loans prior to the maturity date without GreenStone's knowledge and consent.

45. Whether Nicolet simply paid off GreenStone's participation interest without any borrower involvement or involved the borrower in an internal refinancing of the underlying loan to the borrower, Nicolet has breached its contractual duty as trustee under Section 3.6 of the Participation Agreement by acting in a manner that deprived GreenStone of its participation interest in the loan for its sole benefit.

46. To the extent Nicolet acted in concert with a borrower to refinance the participation loan, Nicolet has also breached Section 4.3 of the Participation Agreement by failing to obtain GreenStone's consent to alter the terms of the original agreement with the borrower.

47. Nicolet has also breached the implied duty of good faith and fair dealing under the Participation Agreement as evidenced by the prior 23-year course of dealing between the parties, by unilaterally providing refinancing services to borrowers, on participation loans regulated by the Participation Agreement, owned by GreenStone, and without GreenStone's knowledge and consent.

48. As a direct and proximate result of Nicolet's breach, GreenStone has been damaged monetarily, including loss of expected interest income from the Participation Agreement Loans through the maturity date of the participated loans.

## SECOND CAUSE OF ACTION
### (Breach Of Fiduciary Duty)

49. GreenStone repeats and realleges the allegations of Paragraphs 1 through 48 above as if fully set forth herein.

50. The Participation Agreement created a fiduciary relationship, whereby Nicolet served as Trustee for the benefit of, and accountable to, GreenStone, for GreenStone's interest in each participation loan.

51. Nicolet has breached its fiduciary duty to GreenStone by altering the 23-year course of dealing under the Participation Agreement by unilaterally paying off participation loans prior to their maturity without GreenStone's knowledge and consent.

52. As a direct and proximate result of Nicolet's breaches of fiduciary duty, GreenStone has been damaged monetarily, including but not limited to loss of expected interest income from the Participation Agreement Loans.

53. Nicolet breached its fiduciary duty to GreenStone by placing its own economic interest ahead of its duties to GreenStone, and was willful, wanton and in reckless disregard of

GreenStone's rights under the Participation Agreement such that GreenStone is also entitled to punitive damages.

### THIRD CAUSE OF ACTION
### (Breach Of Duty Of Good Faith)

54. GreenStone repeats and realleges the allegations of Paragraphs 1 through 53 above as if fully set forth herein.

55. As a Wisconsin contract, the Participation Agreement included an implied duty of good faith and fair dealing. Nicolet had a duty to act in good faith and to deal fairly with respect to GreenStone's interest in the participation loans. Nicolet's duty of good faith and fair dealing included, but was not limited to, working cooperatively with GreenStone on loan restructuring consistent with the parties 23-year course of dealing and obtaining GreenStone's consent for such refinancings.

56. Nicolet's unilateral refinancing of Participation Loans regulated by the Participation Agreement, as described above, breached this duty of good faith and fair dealing. This intentionally prevented GreenStone from receiving the fruit of contract. Nicolet unreasonably interfered with GreenStone's right to participate in the loans.

57. Nicolet's breach of the duty of good faith and fair dealing has caused monetary damages to GreenStone.

### FOURTH CAUSE OF ACTION
### (Declaratory Relief)

58. GreenStone repeats and realleges the allegations of Paragraphs 1 through 57 above as if fully set forth herein.

59. GreenStone has a legally protectable interest in the remaining Participation Loans under the Participation Agreement.

60. The parties have a bona fide dispute as to their respective rights and obligations under the Participation Agreement, with Nicolet asserting that it has a unilateral right to refinance a Participation Loan and pay off GreenStone's interest, prior to the maturity date, absent any event of default, and without GreenStone's knowledge and consent.

61. GreenStone and Nicolet have been unable to resolve this dispute and thus, this controversy is ripe for judicial determination.

62. GreenStone hereby seeks an order declaring that Nicolet has no right under the Participation Agreement to pay off GreenStone's interest in any participation loans prior to their maturity date without GreenStone's knowledge and consent.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, GreenStone, prays that this Court enter judgment in its favor and against Defendant, Nicolet, granting the following relief:

A. Compensatory and punitive damages in an amount to be determined by the jury;

B. A declaration that Nicolet has no right under the Participation Agreement to undertake unilateral refinancing on currently existing Participation Loans;

C. Ordering Nicolet to pay GreenStone's attorneys' fees and costs incurred in bringing this action, as applicable by law; and

D. Awarding such other and further relief as the Court deems proper.

## **JURY DEMAND**

Plaintiff, GreenStone, hereby demands a jury trial as to the above cause of action.

Dated at Milwaukee, Wisconsin, this 18th day of October, 2022.

        HALLING & CAYO, S.C.

        By: /s/ Ted A. Warpinski
           Ted A. Warpinski
           State Bar No. 1018812
           M. Andrew Skwierawski
           State Bar No. 1063902
           Attorneys for Plaintiff, GreenStone Farm
           Credit Services, FLCA

320 E. Buffalo St., Suite 700
Milwaukee, WI 53202
Telephone: (414) 271-3400
Facsimile: (414) 271-3841
taw@hallingcayo.com
mas@hallingcayo.com